UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCHIED,

       Plaintiff,

CASE NO. 08-CV-10005

-vs-

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

THOMAS A. DAVIS, Jr., in his
Official Capacity as the Director of
Texas Department of Public Safety,
et al.,

       Defendants.
_____/

**AMENDED OPINION AND ORDER[1]
(1) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT;
AND (2) HOLDING IN ABEYANCE DEFENDANTS' MOTIONS FOR SANCTIONS**

Before the Court are the following motions: (1) Defendant Leonard Rezmierski's February 25, 2008 Motion to Dismiss (Doc. No. 9); (2) Rezmierski's February 25, 2008 Motion for Sanctions (Doc. No. 10); (3) Defendant Governor Jennifer Granholm's March 13, 2008 Motion to Dismiss and/or for Summary Judgment (Doc. No. 15); (4) Defendants Sandra Harris and Fred J. William's April 7, 2008 Motion for Summary Judgment (Doc. No. 26); and (5) Harris and William's April 7, 2008 Motion for Sanctions (Doc. No. 27). Plaintiff David Schied ("Plaintiff") filed Responses to all motions. The Court held a motion hearing on May 16, 2008. Having considered the entire record, and for the reasons that follow, the Court GRANTS

---

[1] The only amendments in the instant Opinion and Order concern whether Plaintiff's counsel indicated the existence of the related state cases at the time of the filing of the federal complaint. The Court finds that Plaintiff's counsel did indicate the existence of the related state cases on the second page of the Civil Cover Sheet. The Court has amended this Order accordingly.

1

Defendants' motions for summary judgment, and HOLDS IN ABEYANCE Defendants' motions for sanctions.

This case arises from Plaintiff's allegations that Defendants have refused to remove records pertaining to Plaintiff's 1977 Texas criminal record from their personnel files. Plaintiff's instant federal case is the fourth lawsuit that he has brought in connection with these same issues.

The Michigan Court of Appeals has summarized the background facts of the instant case:

> In December 1977, plaintiff pleaded guilty and was convicted of aggravated robbery in Texas. Two years later, the sentencing court entered an order discharging plaintiff from the term of probation it had imposed, setting aside plaintiff's guilty plea and conviction, and dismissing the indictment against him (1979 early termination order). In June 1983, the Governor of Texas granted plaintiff a "pardon and restoration of full civil rights of citizenship."
>
> Plaintiff subsequently obtained a teaching certificate and, after moving to Michigan in 2003, sought employment with Lincoln Consolidated Schools. In September 2003, the school district hired plaintiff as a conditional employee. In November 2003, however, defendants terminated plaintiff's employment after they learned from an FBI criminal background report that plaintiff was convicted of aggravated robbery in Texas in 1977, contrary to his representation on a September 2003 disclosure form. The FBI background report contained no indication that the conviction had been set aside.

*Schied v. Lincoln Consol. Schs.*, No. 267023, 2006 WL 1789035, *1 (Mich. Ct. App. June 29, 2006) (unpublished).

In 2004, Plaintiff, through counsel, filed a case in Washtenaw County Circuit Court against Lincoln Consolidated Schools, Lincoln Consolidated Schools Board of Education, and Dr. Sandra Harris (superintendent of the school district), arising from his termination. (Defs Harris & Williams Br. Ex. A, First Amended State Complaint). Plaintiff claimed: (1) breach of contract for being terminated without just cause; (2) discharge in violation of public policy; (3)

violation of 28 C.F.R. § 50.12; and (4) defamation. (*Id.*). In particular, Plaintiff complained that the defendants refused to restore his employment rights, disseminated the criminal conviction, and would be obligated to send the criminal conviction information to future employers. (*Id.*).

On November 10, 2005, the Washtenaw County Circuit Court granted summary disposition to the defendants on all claims. (Defs. Harris & Williams Br. Ex. B, Order).

Plaintiff subsequently appealed the circuit court decision. The Michigan Court of Appeals rejected his appeal on the merits, stating in relevant part:

> Plaintiff primarily contends on appeal that the circuit court incorrectly interpreted Texas law in finding that the 1979 early termination order and the 1983 gubernatorial pardon did not wipe out the existence of his 1977 conviction.
> . . . .
> Near the time that plaintiff commenced his employment with the school district, he completed a disclosure form that the district presented to him. On the disclosure form, plaintiff placed a check mark next to the statement, "Pursuant to 1993 Public Act 68 and Public Act 83 of 1995, I, represent that . . . . *I have not been convicted of, or pled guilty or nolo contendere (no contest) to any crimes*" (emphasis added).
> . . . .
> The clear and unambiguous language of the disclosure form, which plaintiff signed on September 11, 2003, thus authorizes defendants to void plaintiff's conditional employment should he misrepresent that he "ha[s] not been convicted of, or pled guilty . . . . to any crimes." The analysis of this issue therefore depends on whether plaintiff had pleaded guilty or been convicted of any crimes under Texas law at the time he signed the disclosure form on September 11, 2003.
>
> The parties do not dispute the following events concerning plaintiff's criminal history. On December 14, 1977, plaintiff "was convicted in the 183rd District Court of Harris County, Texas . . . . and was sentenced to serve Ten (10) years in the Texas Department of Corrections for the offense of Aggravated Robbery . . . . (Penitentiary Sentence Probated)." On December 20, 1979, the 183rd Criminal District Court entered an "Early termination order of the court dismissing the cause" against plaintiff, which provided in its entirety as follows:
>
>> It appears to the Court, after considering the recommendation of the defendant's probation officer, and other matters and evidence to the effect [sic] that the defendant has satisfactorily fulfilled the conditions of probation during a period of over one third of the

3

> original probationary period to which he was sentenced. Therefore, the period of probation is terminated.
>
> It is therefore the order of the Court that the defendant be and he is hereby permitted to withdraw his plea of guilty, the indictment against defendant be and the same is hereby dismissed and the Judgment of Conviction be hereby set aside as provided by law.

On June 1, 1983, plaintiff received an executive order from the Governor of Texas that stated, in relevant part:

> Subject has been represented as being worthy of being restored full civil rights.
>
> NOW, THEREFORE, I, MARK WHITE, Governor of the State of Texas, by virtue of authority vested in me under the Constitution and laws of this State, and acting upon and because of the recommendation of the Board of Pardons and Paroles dated April 28, 1983 do hereby grant unto the said DAVID SCHIED, AKA, DAVID EUGENE SCHIED A FULL PARDON AND RESTORATION OF FULL CIVIL RIGHTS OF CITIZENSHIP THAT MAY HAVE HERETOFORE BEEN LOST AS A RESULT OF HIS CONVICTION OF THE OFFENSE ABOVE SET OUR [SIC] IN CAUSE NO. 266491.

The parties dispute only the effect under Texas law of the 1979 early termination.
. . . .
We find unpersuasive plaintiff's claim that the 1979 early termination order pursuant to article 42.12, § 20(a), eliminated his prior conviction to the extent that he could truthfully deny its existence on the September 2003 disclosure form.
. . . .
Consequently, we conclude that while the 1979 early termination order relieved plaintiff from the order of conviction and the legal liabilities arising therefrom, the early termination order did not erase the existence of the 1977 conviction such that plaintiff could deny truthfully in September 2003 that any conviction ever existed. We also find unpersuasive plaintiff's suggestion that the 1983 gubernatorial pardon effectively obliterated his 1977 conviction. Similar to article 42.12, § 20(a), the 1983 pardon had no effect on the existence of the 1977 order of conviction, but the pardon by its terms only restored plaintiff's "full civil rights of citizenship that may have . . . . been lost as a result of" the 1977 conviction.

We conclude that the circuit court correctly interpreted and applied Texas law, and properly granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) regarding the effect of the 1979 early termination order and the 1983

> gubernatorial pardon.
>
> . . . .
>
> With respect to plaintiff's contention that the circuit court erroneously dismissed his claim that his discharge violated Michigan public policy, plaintiff's public policy arguments rest on the mistaken premise that he did not misrepresent his criminal history on the September 2003 disclosure form. Similarly, regarding plaintiff's argument on appeal that the circuit court erred by failing to address his defamation claim, we observe that because as a matter of law plaintiff mischaracterized his criminal history on the disclosure form, Dr. Harris did not defame him in her November 2003 letters when she stated that plaintiff had misrepresented his criminal history.

*Schied*, 2006 WL 1789035, *1-5 (footnotes and internal citations omitted) (emphases in original).

On November 29, 2006, the Michigan Supreme Court subsequently denied Plaintiff's application for leave to appeal. *See Schied v. Lincoln Consol. Schs.*, 477 Mich. 943 (2006).

For a period of time in 2005, Plaintiff worked for the Northville Public Schools System as a substitute teacher. After finishing with Northville Public Schools, Plaintiff applied for a teacher position at the Brighton Schools. As part of his application, Plaintiff signed a Release on August 16, 2005, authorizing his former employers to disclose to Brighton any previous unprofessional conduct. (Def. Rezmierski Br. Ex. F, Release). The Release also contained a provision releasing former employers from any liability for providing the information. (*Id.*). Northville responded to Brighton's request and turned over Plaintiff's employee personnel file, which included his 2004 Agreed Order of Expunction for the aggravated robbery in Texas.

On December 4, 2006, Plaintiff, through counsel, filed a lawsuit in Wayne County Circuit Court against Northville Public Schools District. (Def. Rezmierski Br. Ex. A, Complaint). Plaintiff sought: (1) an injunction directing Northville to remove from his personnel

file all information concerning his Texas conviction; (2) an injunction preventing Northville from disseminating said information; and (3) money damages due to libel/slander. (*Id*.).

Northville Public Schools moved for summary disposition. On April 19, 2007, the state trial court granted the motion on the basis that: (1) Plaintiff signed a release authorizing Northville Schools to disseminate the information when required by law; (2) Michigan law required Northville to release the information; and (3) the information disseminated by Northville Schools was true. (Def. Rezmierski Br. Ex. B, Order). Plaintiff did not appeal that decision.

On September 13, 2007, Plaintiff filed a 405-page, 180-exhibit *pro se* Complaint in Ingham County Circuit Court. (Def. Rezmierski Br. Ex. C, Complaint). Plaintiff styled it as a criminal complaint. Plaintiff alleged a variety of causes of action against the following defendants: (1) State of Michigan; (2) Governor Jennifer Granholm; (3) Kelly Keenan; (4) Michelle Rich; (5) Michigan State Administrative Board; (6) Attorney General Mike Cox; (7) Commissioner Laura Cox; (8) Wayne County Commission; (9) Wayne County Office of the Prosecutor; (10) Washtenaw County Office of the Prosecutor; (11) Michigan State Police; (12) Northville City Police; (13) Michigan Department of Civil Rights; (14) Michigan Department of Education; (15) Wayne County RESA; (16) Northville Public Schools Board of Education; (17) Scott Snyder; (18) Katy Parker; (19) David Bolitho; (20) Leonard Rezmierski; (21) Keller Thoma Law Firm; (22) Sandra Harris; (23) Lincoln Consolidated Schools Board of Education; (24) Michigan Supreme Court; and (25) DOES 1-30.

The Ingham County Circuit Court Judge dismissed Plaintiff's complaint for failure to abide by the Michigan Court Rules pertaining to pleadings. (Def. Rezmierski Br. Ex. D, Order).

After holding a hearing on November 7, 2007, the judge provided Plaintiff twenty-eight days from the date of the order to file a compliant complaint. (Def. Granholm Br. Ex. F, Hearing Tr.). Plaintiff failed to do so; and the judge dismissed Plaintiff's case without prejudice. (Def. Rezmierski Br. Ex. E, Order).

On December 26, 2007, Plaintiff appealed that decision. As of the date of the instant Order, the Michigan Court of Appeals has not yet reached a decision on the case. *See Schied v. State of Michigan*, No. 282204 (Mich. Ct. App. filed Dec. 26, 2007).

On January 2, 2008, Plaintiff, through the same counsel as in the Wayne County Circuit Court action, filed the instant federal case against the following defendants: (1) Thomas A. Davis, Jr., in his official capacity as the Director of Texas Department of Public Safety; (2) Jennifer Granholm, in her official capacity as Chairperson of the State of Michigan Administrative Board; (3) Leonard Rezmierski, in his official capacity as Northville Public Schools Superintendent; (4) Sandra Harris, in her official capacity as former Lincoln Consolidated Public Schools Superintendent; and (5) Fred J. Williams, in his official capacity as Lincoln Consolidated Schools Superintendent. Plaintiff's federal Complaint asserts claims under 42 U.S.C. § 1983 for injunctive relief and monetary damages arising out of the dissemination of his Texas criminal record.

On February 15, 2008, Baerbel Cleveland, Section Supervisor at the Texas Department of Public Safety signed an affidavit certifying that Plaintiff had no criminal record on file. (Def. Davis Br. Ex. I, Baerbel Aff.). On February 21, 2008, a Texas Assistant Attorney General sent the affidavit to Plaintiff. (Def. Davis Br. Ex. J, Letter).

To date, Plaintiff has not sought to reopen the Washtenaw or Wayne County actions. The

Ingham County action is on appeal.

All Defendants have filed dispositive motions in the instant case.[2] Defendant Rezmierski contends that Plaintiff's claims are barred by preclusion doctrines and/or the Rooker-Feldman doctrine. Defendant Granholm argues that: (1) Plaintiff's claims are barred by the Eleventh Amendment; (2) Plaintiff has not identified a colorable constitutional claim against the Governor of Michigan; (3) the Court should abstain from exercising jurisdiction over the case under *Younger*, since there are related ongoing state proceedings; and (4) Plaintiff's claims are barred under preclusion doctrines. Finally, Defendants Harris and Williams maintain that Plaintiff's claims are barred by preclusion doctrines.

Rezmierski, Harris, and Williams also move for sanctions against Plaintiff.

**II.     ANALYSIS**

    **A.     Standard for Motions to Dismiss and for Summary Judgment**

The United States Court of Appeals for the Sixth Circuit has summarized the relevant legal standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> In reviewing a Rule 12(b)(6) motion to dismiss, which is based on the failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right of relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." The court need not, however, accept as true legal conclusions or unwarranted factual inferences.

*Michigan Division-Monument Builders of North America v. Michigan Cemetery Ass'n*, 524 F.3d 724, 2008 WL 1901246, *3 (6th Cir. 2008) (internal citations omitted).

Summary judgment motions are governed by the following standard:

---

[2]     On March 24, 2008, the parties agreed to dismiss with prejudice Texas Defendant Thomas A. Davis, Jr.

8

> Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving party. "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact." A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500-01 (6th Cir. 2007) (internal citations omitted).

### B. Res Judicata & Collateral Estoppel as to Defendants Rezmierski, Harris & Williams

Rezmierski contends that res judicata and collateral estoppel bar Plaintiff's instant claims through the Wayne County Circuit Court action. Harris and Williams similarly contend that res judicata and collateral estoppel bar Plaintiff's instant claims arising out of his Washtenaw County Circuit Court action.

The Michigan Court of Appeals has recently summarized Michigan's preclusion doctrines:

> The doctrine of res judicata (also known as claim preclusion) is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) the matter in the second case was, or could have been, resolved in the first, and (3) both actions involve the same parties or their privies. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.
> . . . .
> Collateral estoppel, also known as "issue preclusion," applies when three elements have been met: (1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.' In contrast to res judicata, "[c]ollateral estoppel conclusively bars only issues 'actually litigated' in the first action." "A question has

9

> not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined."
>
> . . . .
>
> [M]utuality of estoppel is not required [when] collateral estoppel is being asserted defensively.

*Michigan Dep't. of Transp. v. North Cent. Co-op. LLC*, 277 Mich. App. 633, 2008 WL 204117, *6-7 (2008) (internal citations omitted), *rev'd on other grounds*, *Dep't of Transp. v. Initial Transp., Inc.*, – Mich –, 2008 WL 2066578, *1 (2008).

        1.      Rezmierski

As to Rezmierski, it is clear that res judicata bars Plaintiff's instant claims.

Plaintiff's Wayne County Circuit Court action was decided on the merits – e.g., the state trial court granted Northville Public Schools' motion for summary disposition. *See Capital Mortg. Corp. v. Coopers & Lybrand*, 142 Mich. App. 531, 536 (1985) (holding that summary disposition constitutes a decision on the merits for the purposes of res judicata). Furthermore, Plaintiff's instant federal and state claims could have been resolved in the Wayne County action – as Plaintiff was aware of the facts supporting both claims at the time of the state case. *See Dep't of Treasury v. Campbell*, 161 Mich. App. 526, 529 (1987) (recognizing that Michigan state courts have concurrent jurisdiction over federal § 1983 claims). Both actions contained the same parties or their privies. Although the Wayne County action named Northville Public Schools, instant Defendant Rezmierski, as Northville Public Schools Superintendent, is in privity with the school district. *See Engle v. City of Livonia*, No. 272618, 2007 WL 1206833, *2 (Mich. Ct. App. Apr. 24, 2007) (unpublished) (recognizing generally that for the purposes of res judicata governmental employees are in privity with their agency). Finally, any claims that

Plaintiff could have brought through reasonable diligence at the time of the state court case are also barred.

Plaintiff attempts to avoid the res judicata bar by arguing that he has suffered "new" injuries since the conclusion of his state court proceeding: (1) Rezmierski's "stubborn insistence to maintain inaccurate and untrue personnel records and information about plaintiff's criminal history"; (2) refusing Plaintiff's request to destroy Plaintiff's criminal history records; and (3) Rezmierski's dissemination of Plaintiff's criminal history pursuant to a FOIA request from the State Administrative Board. (Pl. Br. 6-7). Finally, Plaintiff points to the February 15, 2008 Texas affidavit demonstrating that his criminal record had been cleared as "new" evidence that substantiates his instant claims.

None of these contentions is availing. The first two "new" occurrences could have been brought in Plaintiff's Wayne County Circuit Court action. Plaintiff offers no documentary evidence of a purported FOIA request from a "State Administrative Board." On the other hand, Rezmierski submits a sworn affidavit that he has never received such a request. (Def. Reply Ex. 1, Rezmierski Aff. ¶¶ 5-6). The instant issue is the same as in the previous state court action – Plaintiff's complaint in the Wayne County case clearly requested the court to grant an injunction to remove his criminal history information from his personnel file and to prevent Northville Public Schools from disseminating the information. Finally, his Texas affidavit, revealing that a name check did not reveal any criminal record in Texas, does not bring to light any new information not known in the Wayne County Circuit Court action – the court was aware that Plaintiff's criminal record had been expunged.

Accordingly, the Court finds that res judicata bars Plaintiff's instant federal claims

against Rezmierski.

### 2. Harris & Williams

Similarly, res judicata also bars Plaintiff's instant claims against Defendants Harris and Williams.

First, the Washtenaw County Circuit Court action was decided on the merits, and the Michigan Supreme Court ultimately denied leave to appeal. Second, Plaintiff's instant claims against Harris and Williams could have been resolved in the state court forum. Finally, Harris was named as a defendant in the state court case. Harris' successor as superintendent, Williams, is in privity with the previous state court defendants.

Plaintiff again attempts to show that his instant federal lawsuit, claiming that the Washtenaw County case was "limited" to Plaintiff's employment issues. Plaintiff's contention is not an accurate characterization of the Washtenaw County action. In fact, Plaintiff's complaint in that case explicitly alleged that:

> 38. The Defendants, however, have violated the state's public policy in wrongfully terminating [Plaintiff] by 1) failing or refusing to treat the set aside conviction as a nullity; 2) failing or refusing, after being informed of the set aside and Governor's Pardon, to restore [Plaintiff's] employment with full rights and benefits; and 3) divulging, using and publishing information concerning the conviction when they knew or should have known that the conviction was set aside and the (sic) [Plaintiff] had been granted a Governor's Pardon.
>
> . . . .
>
> 51. Defendant Harris' publication of the false and defamatory statements included placing the letters in [Plaintiff's] personnel file and orally telling unnecessary school employees the claimed reasons for [Plaintiff's] termination.
>
> 52. Because the false and defamatory accusations are contained in his personnel file, each time [Plaintiff] applies for a job the statements are re-published, [Plaintiff's] professional reputation is further damaged and he must endure continuing embarrassment and humiliation.

12

(Def. Harris & Williams Br. Ex. A).

Plaintiff's instant claims revolve around his allegations that Harris and Williams "ignored" his requests involving his criminal history, and seeks the Court to enjoin further dissemination of his criminal record. These issues either were, or could have been, resolved in the Washtenaw County Circuit Court action.

Therefore, the Court finds that res judicata bars Plaintiff's instant federal claims against Harris and Williams.

### C.     Granholm

Defendant Granholm, as Chairperson of the State of Michigan Administrative Board, moves for dismissal in part on the basis that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff alleges that Granholm has refused to apply the Full Faith and Credit Clause to the Texas expungement order and to order the school districts to remove the criminal record from Plaintiff's file and to refrain from disseminating said information.

 Initially, Plaintiff does not make any coherent argument, nor cite any authority, that Granholm's refusal to comply with Plaintiff's requests constitutes a cognizable cause of action under § 1983. Even if he had, the Wayne County Circuit Court already determined that the fact that Plaintiff's record had been expunged in 2004 did not create an obligation on behalf of the Northville defendants to remove the criminal history information from the file, nor to stop disseminating the records when requested.

Plaintiff's sole response is that he did not attempt to contact Granholm to request the removal of the criminal history information until after the conclusion of the state court proceedings. The Court finds that Plaintiff should not be allowed to keep bringing new lawsuits

arising out of the same facts every time he "discovers" another party whom he can allege causes of action based upon the criminal history records. Res judicata bars "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." There is no doubt that allegations involving Granholm could have been made in the state court proceedings. The Michigan courts have already decided that the school districts are not in violation of Michigan law pertaining to the keeping and the disclosure of Plaintiff's employment file. If Plaintiff believed that Defendants violated his constitutional rights, those claims could have been asserted throughout the various state court proceedings. Plaintiff pursued the Washtenaw County Circuit Court action to the Michigan Supreme Court, failed to appeal the decision of the Wayne County Circuit Court, and is currently pursuing a *pro se* case in the Michigan Court of Appeals.

Therefore, the Court finds that res judicata bars Plaintiff's claims against Granholm.

### D. Motion for Sanctions

Defendants Rezmierski, Harris, and Williams move for sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. Defendants contend that: (1) preclusion principles clearly bar Plaintiff's instant case; and (2) counsel for Rezmierski advised Plaintiff's counsel to that extent. Defendants cite several cases from the Eastern District of Michigan where plaintiffs have been sanctioned where their cases were clearly barred by res judicata. Harris and Williams generally request sanctions against Plaintiff and his counsel.

Having considered the parties' arguments, the Court HOLDS IN ABEYANCE Defendants' motions for sanctions.

## III. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **GRANTS** summary judgment to Defendants Rezmierski, Harris, and Williams (Doc. Nos. 9 & 26);

(2) **GRANTS** Defendant Granholm's Motion to Dismiss (Doc. No. 15); and

(3) **HOLDS IN ABEYANCE** the motions for sanctions filed by Defendants Rezmierski, Harris, and Williams. (Doc. Nos. 10 & 27).

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 1, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 1, 2008.


S/Denise Goodine
Case Manager